Next case is Kenneth Duncan v. Secretary of Veterans Affairs, 2008-71-43. Is Mr. Porco here? Yes, Your Honor. We're ready when you are. Your Honors, may it please the Court, I am Christopher Aldo Porco here for the claimant appellant, Reverend Kenneth Duncan, who sits before you here today. And I believe the heart of this case can really be summed up in two words, and that's 33 years. That's 33 years since he sustained his injuries in the line of duty as a member of the U.S. Air Force. He was involved in an auto accident in the line of duty in May of 76, as well as sustained a head injury from a fall in July of 76. And as you've seen from the record, the case has gone from the regional office to the board, to the Court of Appeals for Veterans Claims, back to the board. Mr. Porco, you say the heart of the case is 33 years, but we've had all sorts of procedural issues. Whether this case was remanded, whether he appealed properly, whether it involves our applying law to fact, which we can't do, would you please focus on the issues that are properly before us? Absolutely. And what that ties into is what I was saying is the procedural history of this case, how it's gone back and forth, and how it got to this court. Most recently, there was, of course, the decision from the Veterans Court. Part of that decision, they denied retroactive payments for TDIU, total disability based on individual employability. And part of that decision, why it was erroneous, and how specifically that's a question of law and how that applies, is that they said that the TDIU benefits can't be granted retroactive because the decision had been finalized and there was no appeal of that issue. But as with this decision, as well as the others, all of the rating decisions impacted his ability to obtain TDIU retroactive. Can you explain that to me in a little more detail? The portions that they remanded had to do with the ratings for what? Was it the ankle injury or the remand of the case? I believe so, Your Honor. Various other ratings. Yeah. And whatever is remanded, all of that can impact whether or not he receives TDIU because the statute cited in the briefs state that you can receive TDIU based on certain rating decisions, rating percentages. So anything that's remanded can have an impact on TDIU. So that's why you didn't appeal it separately? Well, I was in his counsel at the time. I'm not sure why it wasn't appealed necessarily, Your Honor. But that may have been something along the lines of why it wasn't appealed. But that's an important fact. Excuse me. Yeah. But there are two different questions, arguably, whether he could have appealed it separately and whether he should have appealed it separately. Do you think he could have appealed it separately? On that issue, I'm not entirely sure because in the 2004, I believe it was the 2004 board decision, they had talked about retroactivity of the TDIU. And they had said that, at least I think as far as the 1977 claim, that it couldn't be – that there was no – they didn't have jurisdiction in 2004 to even determine that. So I'm not exactly sure how he could appeal that decision if the court said that there was not jurisdiction on that issue. You started by arguing and – or by suggesting, and you're absolutely right, I mean, it's the fact that this case has been going on for 33 years. But in connection with the timeframe, and obviously this isn't responsible for all of the delay, it seems to me one of your arguments is he should have had more hearings, not fewer hearings, right? Well, in regards to that, Your Honor, he had never requested increased ratings as far as what the board had been adjudicating. He had requested initial ratings. And so on that, there weren't any hearings specifically in regards to that issue. And that's why he was requesting a hearing on that. So in regards to the TDIU, also keep in mind that it's not necessarily a freestanding claim. As this court announced in Roberson, as well as Comer, and I know some of Your Honors were on some of those panels, the TDIU is not a freestanding claim that necessarily has to those rating decisions at. But it was decided in 04, wasn't it? At least in part, Your Honor. That's why I said it's kind of ambiguous as far as what the court determined. It said it didn't have jurisdiction, but it did have jurisdiction. And so that's why it's undetermined whether or not that could have been appealed at that time. And again, I wasn't… Suppose hypothetically that we hold that either it couldn't have been appealed at that time or he didn't have to appeal at that time. Let's assume that we agree with you on that. What's the point here? Why is this earlier decision still open because of the failure to submit a statement of the case when the board ultimately remanded to have the statement of the case issued? I'm having trouble understanding that. Well, with that, Your Honor, the statement of the case was issued after it had gone to the board. And that statute cited says that a decision can be vacated at any time if there was a statement of the case issued. Well, there was a statement of the case. Then the board remanded to have a statement of the case issued. Well, in the court opinion, it also affirmed… And the RO did issue a statement of the case after the remand, right? It did, but the court didn't entirely vacate that board's decision. It affirmed in part as well as vacated in part. I'm not understanding what's wrong here. I mean, there was a remand to issue a statement of the case. The statement of the case was issued. What's the point you're making? Our position to that was that the entire decision should have been vacated, not just partially vacated because there wasn't a statement of the case. And according to the statute that there's no statement of the case, the decision should be vacated. That was our position on that. Well, but that sounds like an error that should have been addressed at the time, right? You're saying that if they'd remanded the entire decision for the issuance of the statement of the case, there would have been no error here, right? Well, arguably no, because then there were subsequent decisions that relied on that erroneous decision that should have been vacated in its entirety. Okay. Can I ask a sort of a similar question to Judge Dyke in terms of even if we arguably agree that he didn't necessarily have to appeal that separate TDIU portion at the time, sort of like what's the point of all of this? As I understand, one of the arguments you're using for saying he couldn't have appealed or he shouldn't have appealed was that it was related to some of the stuff that went back on remand. But given the outcome of that, doesn't it, as a practical matter, moot the issue of TDIU? I'm not sure if I'm following you on that. You say you should have been able to preserve that. You couldn't have or you shouldn't have had to appeal the TDIU portion because it was related or about to be affected by what happened on remand with respect to the other issues. But where do we stand now on those other issues? Well, I mean, where we stand now is he has the medical evidence to back up the fact that he has TDIU and there's multiple rating decisions that haven't been disputed. So the point being that the benefits should be granted retroactively back to 1976, not 1994, which is where it stands. So there is actually evidence or you think an argument that you have now on TDIU based on the remand that you wouldn't have had if you had had to have appealed it at the time? I do believe so, Your Honor, based on the evidence that was presented to this court that he has the ratings that qualify him for TDIU and that claim had never been fully adjudicated by the Veterans Court. But you can bring a new claim based on new and material evidence, can't you? He could based on new material evidence, but it wouldn't be retroactive back to the date of the claim, which is, you know, he sustained the injuries back in 1976. So he has benefits 100% since 94, but he doesn't have them all the way back to 76. And as I pointed out in the briefs, there's medical evidence that shows that he has the percentage necessary to get TDIU back to 76, but neither the BVA nor the Veterans Court had adjudicated that to its optimum. So that's what we're arguing today. You know, if we could get a reversal based on the undisputed facts and the evidence pursuant to the case of Groves and this court that he should be granted benefits retroactive to 76. And if not a reversal, then, of course, a remand. Of course, we can't decide that. It's an application of law to effect. Well, the case of Groves where there's undisputed facts that if the court determined that rule in favor of the veteran as far as the question of law, looking at the undisputed facts that the court could in its power grant benefits. It's still application of law to effect, even if it's not determining facts. Okay. But in the alternative, a remand would be the next best option. Any other questions? I want to ask you about Chairman Flowers. You made this argument in your opening brief that it was a violation of the regulations for him to preside at the hearing. And you don't seem to pursue that in the reply brief. Do you agree that Flowers was not the Chairman of the Board? Well, that, Your Honor, was first presented in their brief. It hadn't been presented before. But it's a public record. I mean, was he the Chairman of the Board or wasn't he? Well, according to their argument, no. I mean, I didn't see anything that said otherwise. But at the same time, I didn't know that that argument had been presented before the Board, had been presented to the court. So as far as that goes, I didn't see that before. So I have nothing to refute that, I suppose. Any other questions? I'll reserve my time for rebuttal. We'll save the rest of your time, Mr. Dinser. May it please the court. The court should conclude it doesn't have jurisdiction over Mr. Duncan's TDIU start date or disability code rating and his due process claims are legally unsupported. The Veterans Court concluded that it did not have jurisdiction to review the TDIU start date, which was based on a decision by the Board in 2004. In that decision, the Board did two things. It gave Mr. Duncan TDIU starting 1294 and refused to give him TDIU before that. A little off the track. Is TDIU a 100% disability? No, Your Honor. A 100% disability is a scheduler rating 100%. It means you don't need TDIU. And in fact, if you get the 100%, you can't pursue TDIU because you have a 100% rating and you're going to get everything that you would otherwise get. It sounds like they're equivalent. The required showings are not equivalent, Your Honor. For TDIU, the idea behind TDIU is you have less than a 100% scheduler rating and you show unemployability. What happens is you have some sort of injury, service-connected, you don't get to 100%, you show unemployability. In other words, total unemployability even if you have a less than 100% rating. I'm sorry, Your Honor? You get a TDIU total disability rating even if you have less than a 100% rating. Yes. In fact, you can only because once you get the 100% rating, they don't look for TDIU. But there's a gap here then. That he's seeking TDIU status back from 76 to 94 for periods in which he didn't have a 100% rating. Yes. And the point is, and this relates to something that my esteemed colleague, I think, misstated. There's not a connection between getting a higher rating for Mr. Duncan and a TDIU claim. The board did two things. It set the TDIU date and it remanded him to pursue further ratings on his back and his neck. The pursuit of higher ratings on back and neck would not affect the TDIU. The TDIU for far earlier, before 1994, was denied because of lack of evidence of unemployability. In fact, Mr. Duncan was employed from 1983 to 1993 by the federal government, full-time, full employment. So, it was not the remand portion. The ratings were completely separate, completely separate issues from the elements that were final, which is, does he get TDIU before 94? No. Did the remand involve ratings decisions with respect to those particular things before 94? Yes. Back and neck before 94. So, if there's information or facts out there that deal with his medical condition before 94, I mean, we don't know. How can we say with any certainty that that could absolutely not have been relevant to his making a case about whether or not he was unemployable? Because, Your Honor, first, he was employed for most of the time. Okay, so you said 83, but what about from 76 to 83? In 77 and 78, he was also employed by the city of Baltimore. But besides that, he has the burden of providing evidence. The regional office, the board, they have found that he did not provide evidence of If he goes back and he shows, look, instead of a 40% rating, I really get a 60% rating on my back, and I get a 50% rating on my neck, that doesn't show unemployability. Unemployability is you go out, you can't find work. You demonstrate an inability to find work. It's not related to how injured you are. It's related to the search and the inability to find work. That's what makes them completely separate factual issues. But let's assume that that's true, okay? The rule governing appeals from the board to the Veterans Court is that the particular issue has to be filed, as I understand it. Yes, Your Honor. It doesn't require that the whole case be filed. We relate it to Federal Rule of Procedure 54B, where parts can be broken off, sent on up, parts can be held on to for further fact. So what case says that the mere fact that he could appeal in 2004 compelled him to appeal in 2004? Once a claim becomes final, under the Veterans Court's jurisdictional statute, he has 120 days, in the same way the whole claim becomes final. But you analogized it to Rule 54. Under Rule 54, you can wait until the end of the case. You don't have to appeal necessarily on an interim basis. Actually, if the court finalizes the claim under Rule 54, then my understanding is, Your Honor, that the clock starts running on the claim once it's been finalized by the court. But the mere fact that you could have gotten a Rule 54 certification and that you didn't doesn't prevent you from waiting to the end of the case and appealing, right? Is that correct? That is correct. If the court does not give a Rule 54 here, Your Honor, and I think it would be helpful to the court. But what case of ours says that the mere fact that you could appeal from the board to the Veterans Court means that you must appeal at that interim stage? Well, Your Honor, because it's a question of finality. What case? There's no case. So it's a question of first impression. I think that that's fair, Your Honor, to a certain extent. If a claim is not final, you can't appeal it. So you've got one of two things. Either it's final and you must appeal it, or it's not final and you can't appeal it. And I think it would be helpful for the court if we looked at page 578 of the joint appendix. This is where the board issues its order. And it says, without any question, it says under its order that it's granting the effective date of December 94. Then if the court turns to 581 of the joint appendix, it sees the notice that's given to the veteran saying you have 120 days to pursue those elements that are final under the order heading. And there's no question that Mr. Duncan is not asserting confusion or misunderstanding. There's no question that, indeed, he had taken a previous appeal to the Veterans Court. And so he and his attorney knew about it. He was represented. They made the strategic decision. Here's a final decision. We're not going to pursue it. Now, the alternative world, Your Honor, would be nothing at the board becomes final until everything becomes final. And this is problematic both for a large variety of veterans and for the court itself. If you're a veteran and you have a hand claim and a foot claim that are completely unrelated, and you get your foot claim remanded, and you get a final decision, 30% on your hand, that's it. It may be in your interest to pursue the hand claim. There's a third alternative, as suggested by Judge Dyke, that he could have appealed it, but he didn't have to. That doesn't prejudice the veteran because then he has the choice. Your Honor, there is nothing in the jurisprudence of the board or this court or the federal rules to give an optional to say, look, at this point in time, you have a choice. You can pursue an appeal or you can't. In fact, I would suggest that that would undermine the 120-day limitation. Well, what if there's some basis for the veteran to believe, at least, that there's a chance that the issues as resolved on remand could give him more information or better information with regard to the issue that's the other issue? He should do one of two things. He should either go to the board and say, please reopen and don't issue a final on this. These are related. Or he can go to the veterans court and say the board made a mistake. It divided these. These should be kept together. And either one of those options are available in the same way that they're available in 54B. What you can't do is when you receive this notice that says your rights to appeal our decision and you receive an order that says, you know, this is it, you can't not do anything on the appealable aspect. It can't be an option that's in the hands of the petitioner. It either has to be one of two things. Either nothing is final at the board until it's all final, which would be problematic on the veterans who want to pursue half and pursue the other half on remand. Or it must be that the board can finalize elements, send them up, and let the veterans court deal with those elements. The Supreme Court in the Sears case, when considering 54B, said the trial court is the dispatcher. They're the ones to make the decision what's going up and what's staying there. And the board has the same function here, and it's an important function. And if the court were allowed, it's a jurisprudential function. This isn't like a Rule 54 function that the board is performing here. They're just, you know, giving a boilerplate notice about the right to appeal. There isn't any decision being made that is under Rule 54 to certify it. Well, it certainly, I would grant the court that that language is not used. There is no Rule 54B, but the language here is under the word order, and it states that an effective date, and it states the effective date. In the notice that's given to the veteran, it says the tax decision by the veterans board is the full decision for all issues addressed in the order section. So it's saying that's the final decision. I mean, there's really no ambiguity. And so the question is, I mean, what the petitioner is suggesting is either it's sort of at the petitioner's option, and I don't think that there's anything in the statute or anything in jurisprudence that would allow the petitioner to just choose whether to appeal or not. The other alternative is everything has to catch at the board until it's all done. And I think that that does a disservice to the veterans, and it does a disservice to the veterans court, which should be able to manage its docket and decide these things are appealable now. And in fact, since it's a jurisprudential question on finality, I would submit that that might be unreviewable by this court under the Andrus case, which says that jurisprudential questions are not reviewable. What? It says jurisprudential? What does that mean? Well, in the Andrus case, there was a question of the issue of if something's not raised in the first brief before the veterans court, is it waived? And the court in Andrus decided that that was a jurisprudential issue that could not be appealed to this court. It was not something that was appealable. And the question of finality, I submit, can be viewed in that way and allow the veterans court to have control over its docket as to what is final and what is not. So what does he do? If he has new and material evidence, he can bring another action? Absolutely, Your Honor. New and material evidence is a completely separate question, and he's not suggesting that he does. I thought he did. I thought he said, I have evidence now that will give me an earlier date. Well, as I understood... But he wouldn't get the earlier date, would he? Well, Your Honor, it depends. As I understand what counsel is saying, he has new evidence about his medical rating. That won't affect his TDIU because that's not unemployability. He would have to have new evidence about his unemployability in those spaces when he didn't work. If he has that, under 38 CFR 3.156A, it describes what the new evidence is, and if he has that under USC 5108, the Secretary has to reopen the case for new material evidence. Your Honor, can I go back? You just raised a point that reminds me of where we started here, looking at TDIU versus the other ratings. I mean, it's a common sense thing. Isn't there a relationship between the two? I mean, how do you prove unemployability? I mean, you know, for the most part, I mean, you can show that you went to try to get 1,500 jobs and you didn't get it, or you can show that your medical condition was such that you couldn't have done these jobs. So I'm having a hard time about just slicing the line and saying there's medical stuff on this side and there's employability stuff on this side. Well, Your Honor, but first of all, we have a factual finding, which is not reviewable, that there's no evidence of unemployability before this date. But the second part is, Your Honor, yes, you have to go out and at least, I mean, if there's any way for you to go out and seek work, obviously some people are so incredibly disabled that they can't seek work, but that would typically come into the 100%. If people are less than 100%, can he sit at a desk? Can he stand at a desk? Can he do... I mean, that's a question of go out, you've been looking for work, you can't find it. Not really. If the question is can you sit at a desk or stand at a desk and you've got evidence with respect to neck problems or ankle problems that establishes that medically you could not be able to sit at a desk for 8 hours a day, then doesn't that answer the employability with respect to 8 hours a day at a desk? Doesn't that answer that question? Respectfully, no, Your Honor, because whatever his limits are, and let's say his rating is 30%, but his physical limits, you know, when that finally gets sorted out might be higher. Maybe they're 80%. He's got a lot of very severe physical limits. Whatever he can do, he has an obligation to go out and to try to find work with whatever he can do, and maybe he can. And, I mean, that's that... He can what? Find work. And if he can, then that's fine, and if he can't, then he can submit evidence that he can't find work. If the medical condition establishes that he can't sit for more than 4 hours a day, then what are you saying? That he should... He's then still compelled and required to prove that he can't find a job for 4 hours or less a day? No, or that he can't find a job at Macy's selling articles, that he can't find a job at an insurance company that can let him stand, that he can't... Yes, he has to make some effort to go out, and then he documents this, and he provides it to the board, or the regional office. The analysis of what makes him able to find a particular job or not is predicated on the severity of his medical condition. It's predicated on the severity of his actual medical condition, not on his rating. So the fact that the rating might go down and increase has nothing to do with... I mean, he is who he is, whether he's been underrated or not. So it's based on him going out with whatever physical liabilities he has, and pursuing some sort of work, and documenting it. But we do have that factual finding. The question of whether it's the board's... The board made the determination that these two pieces can be split, and if he thought that they were connected, he should have appealed that subject to the Veterans Court at that time, and he and his attorney did not appeal that. So even if... You mean he should have gone back to the board and said, wait a minute, guys. You shouldn't declare the TDIU piece of this final. You should wait. Even though you're not remanding it, what should you do? Hold that issue here and wait for me to go back on the remand portion? Well, your Honor is hypothesizing since the TDIU wouldn't be final because it would be subjected to this percentage, that would be remanded too. But in this case, there was nothing to remand on the TDIU because there was no evidence of unemployability. Or he could go to the Veterans Court. Again, I'll analogize to 54B. If the trial court issues 54B and you don't like it, you're the other side and you sought to prevent it. You go to the Court of Appeals, you say the trial court made a mistake on breaking off these pieces, and send it all back down. And the veteran in this case could have gone to the Veterans Court when he received the notice of appeal and said, court, this never should have been broken off. Send it back down. He never did that. And in fact, he never made that argument to the Veterans Court. So at that point, there has to be some finality. At that point, those elements are final. Thank you, Mr. Dentzer. I think we hear your argument. Mr. Porco, or is it Aldo Porco? Well, the last name is Porco, but I like to use my middle name. So it's Christopher Aldo Porco is my full name. If I may just real quickly address what I had mentioned before as far as the evidence. It's not new evidence. It's already existing evidence. And I discussed it, I believe on page 29 of the brief. But also, more importantly, this had been presented to the Board of Veterans' Appeals. If you look at the Joint Appendix, beginning on page 872 through about 874, it talks about how he was unemployed at various periods before 1994. But do you disagree with what Mr. Dentzer has been telling us about the distinctions between the TDIU claim and the rating claims? Is there anything you take issue with? Well, I take issue with that in that it seems to be an overly harsh rule to say that if a veteran has a certain disability at a certain rating and they actually do become employed and they work through pain, that they should be somehow punished for that. So, you know, just by the fact that... Well, I mean, we're not talking about punishment. We're talking about whether or not they should have been able to collect TDIU benefits if they were employed, right? I mean, that's not a punishment. That's, you know, the way life is. Well, I mean, I guess it's punishment in the sense that if someone has a disability and they're working regardless of that disability, I would say on that end, it would be in a sense a punishment because it would encourage people... So you think that under the law, even if you were working, you can go back and get TDIU benefits? I don't think that's necessarily the case. I don't think that's necessarily the case, no. But I do believe that in certain cases, if a veteran has a certain disability and they're working regardless of that, that should necessarily negate the fact that they are, you know, should be getting some sort of benefit. So with regard to Mr. Duncan specifically... For TDIU, if they're working, they can still collect TDIU benefits? Well, I guess specifically for TDIU, then it wouldn't necessarily... the two wouldn't necessarily match if someone's working and they're receiving TDIU benefits, no. With regard to Mr. Duncan, as far as his employability or not, prior to 94, specifically on page 873, there's various representations made to the board that had obviously been ignored because he didn't get TDIU prior to that and he did have those ratings. So... But was he unemployed during... Yes, at various periods, and that's what I'm referring to being on page 872 through, I believe, 874, if your honors look at that. There were specific representations made as far as when he had been off work. And this also actually goes back to there's a period in 77 when he didn't work. So there's various periods where he wasn't working with the ratings to qualify for TDIU, but those benefits were not granted. If we don't buy the argument that there were... there were issues or facts in connection with the remand that might have been useful or germane to the TDIU issue, do you lose on whether or not the Veterans Court erred in not hearing the appeal... saying that you were required to file a separate appeal on that issue in a timely way? Could you say that again, Your Honor? If we conclude that we disagree, on one page of the gray brief, you respond to this argument about whether or not you should have appealed the TDIU portion at an earlier time and you suggest that there was some relationship between the facts and the remand and the TDIU issues. If we disagree with that, do you still have an argument that it wasn't incumbent upon him to appeal the TDIU claim timely after the 2004 decision? Well, I wouldn't necessarily concede that, especially based on all of the other procedural history of this case, that a lot of those claims would still remain. So, if there are any other questions, I'll close with that. Thank you, Mr. Porco. Thank you, Your Honor.